We'll hear the first case on calendar, Zarda v. Altitude Express, after which we will go off the bench for seven minutes and the panel will then be reconstituted with Judge Carney in place of Judge Lynch.  Good morning, Your Honors. May it please the Court, my name is Greg Antolino. I'm here with Steve Bergstein, my co-counsel. There can be compelling reasons to change longstanding precedent, including, as was the catalyst in this case, a change in applicable regulation. The EEOC is entitled to at least some deference. We won't tell you which one, although we've outlined at least two, and they are entitled at least to the deference to which they are able to persuade. And they have decided that the regulations under Title VII determine that sex discrimination includes sexual orientation discrimination. Well, this is a very interesting issue and of considerable national importance. How does it make any difference to your client, or indeed to anyone in New York State or Vermont or Connecticut? Well, that's a good point, Judge. Shouldn't we be talking first about whether we need to reach this issue? Because your client had a trial on whether there was sexual orientation discrimination here, and the jury decided against it. Well, as we pointed out in the brief, the jury instruction held us to a higher standard than we— But don't you believe that that standard was wrong as a matter of New York law? I do believe it was— And didn't you so argue to the trial judge? Yes. But you haven't appealed that as error with respect to the State issue? The judge cited the PJI with respect to that instruction, and I could not disagree with him that the PJI did say that. And— Yes, but you still think that's wrong as a matter of—the pattern of jury instruction is incorrect as a matter of State law, don't you? I do believe that it is. But you're not making that argument to us. I have alluded to it, and I have thought through it through the last six months, and I think that the people at the PJI were asleep at the switch, and they have not been in touch with the decisions under Federal law. Well, maybe that's so all right, but the PJI is not an authoritative source of New York law, is it? To some extent, it is. To some extent, it's not. And certainly in Federal court, you follow what the highest court of the State is. But in addition, under Federal law, if there is a motivating factor found, and it is not the only factor— the jury instruction would be wrong as a matter of State law as well. What I'm trying to figure out is, back before we got to the jury instruction stage, why was it ever relevant what Federal law was? If I were the trial judge, I would have said to you, please explain to me why the Federal law either gives you more relief or makes it easier for you to prove your case, as opposed to harder, since it raised a question at that point that was fairly dubious as a matter of Federal law. And if not, why don't I just tell the jury that sexual orientation discrimination is illegal, and here's what it means, and here's how you find it. And if the plaintiff proved his case, he wins. If he didn't, he loses. And that's all you need to tell the jury. You don't need to tell them whether it's Federal law or State law. Three reasons. One, punitive damages. Two, attorney's fees. Three, the instructions that were given. Well, wait. So this is the question. So Federal law provides greater relief than State law? Yes, it does. Because punitive damages and attorney's fees are not available under State law. Yes. And this particular plaintiff was a low-wage earner. We claimed at the end that, at most, he would have been entitled to $140,000, given that he had only four years of wages to claim. All right. So we do believe it makes a difference. And we do believe that a circuit that has three states that include sexual orientation discrimination should take the lead in the country. If you're going to ask me that question, Judge, that would be my answer, should take the lead over other circuits that do not. I think you had a better answer when you said that Federal law gives people more relief than State law. It does give more relief. I don't know why we should be taking the lead on issues that don't matter to anybody in our circuit. It would be basically moot. But you're telling me it's not moot because the Federal law, if applicable, would provide greater remedies than State law. Absolutely. Simply put, if you lost on the State cause of action, how would you win? The difference in standard? Is there a difference? I mean, how would you win if you went back and tried the Federal? It's clear under the Nassar case that a status discrimination is a motivating factor. So a motivating factor need be only one part of the decision. It's easier to win. It's easier to win under Federal law. And, therefore, if it's easier to win under Federal law, it is easier to get attorney's fees. Maybe so, but if it's easier to win, even if the damages were the same, if you had a cause of action, you'd want to take it. It wouldn't matter whether the damages were the same or not, would it? At some point when there are no attorney's fees, a private attorney general is going to turn down a case because he knows he's not going to make any money. And that is what Title VII, that is why Title VII provides for attorney's fees, because the plaintiff's attorney can take the case in order to prove the harm and win the client some money and win attorney's fees for him or herself. Haven't we said that there's no difference between the determinative factor and the motivating factor standard? When the shoe was on the other foot, when a defendant was claiming that a jury should have been told determinative factor and was told motivating factor, we said these are basically the same thing. That might have been before Nassar, but I don't think since then, and since then you've ordered new trials. Nassar was a case of retaliation discrimination. Right. And in Nassar, the majority held that it was determining but not motivating. The minority held that for status discrimination, which is this case, it is a motivating factor, and all nine judges agreed with that. This is not a retaliation case. And this Court has, in two examples we gave in our brief, held that if a court instructs on the higher standard, the lower standard is the proper one. Do you think we should go in bank to overturn two precedents, one because the Supreme Court has now, in the retaliation case in Nassar, clarified that motivating and determinative are different, and the other, Simonton, because the EEOC has staked out a position on sexual orientation discrimination? No, we don't ask that. First of all, we believe that you followed Nassar twice without going on bank. You just accepted that and applied it. And second, we point out in our brief— Well, have we ever—is there any case that you can point to where this circuit has said that it was error to use the word determinative rather than the word motivating in a discrimination case under Title VII? Cassato against Donahoe. First of all, it's a summary order, and secondly, it doesn't say that. I wrote that. It was a summary order. I was on that panel. It doesn't say anything like what you said it says in your brief. Well, the defendant in that case was given a jury instruction of motivating factor, and then after Nassar came down, they asked for a new trial under determinative factor, and they got it, and this Court affirmed. Is the very wording in this case, but for? Determining factor is but for, as I understand it. What was spoken to the jury by the judge, but for or determining factor? Well, but for, in my view, is the same as— What did the judge say? I know that he said determining factor. I believe that I read but for. I seem to remember that. Okay. And motivating factor is much less than but for. So there's a complete difference in the level of proof. There are more damages. There are more attorneys who will be willing to take a case— In this case, if you're right, if you're right, and the standards—let's assume the standards are completely different, what difference does it make how much damages you have? You have a different cause of action that, according to you, on the law, was wrongly thrown out. Why do you need anything else? I mean, you're here. Are you telling me you wouldn't be here if it wasn't for the possibility that you would have won lawyers' fees under the federal court? I can't answer that question. I thought about that, and I don't know the answer. But I do know that I certainly am here in part because Title VII should include sexual orientation as an aspect of sex, and that includes all of the relief under Title VII. There's no question that—in my mind. I'm obviously not talking for anybody else. In my mind, there's no question that that question is ripe for revisitation. The question is whether it's revisitation in this case or in this court or eventually in a different one. I certainly wouldn't disagree with your notion that this is—the issue as a sociological issue as much as a legal issue is ripe for revisitation. We could have won under motivating factor given the many, many reasons they gave for terminating Don Zarda in the lower court. And we could have also won attorneys' fees and punitive damages. And that is the reason we are here, and that is the reason there's a difference. You reserved some rebuttal. Thank you. I'll hear you then, sir. Good morning. Good morning, Your Honors. May it please the Court. I, too, agree that Title VII should cover sexual orientation. It should. The law should be changed to cover it. This court did the research. They wrote the decision. Judge Sackett was your panel that wrote that decision. And you relied on the legislative history, the context, and Dicintio in determining that Title VII does not cover sexual orientation right now. Has the Supreme Court precedent in the interval provided reason to rethink that? No, I don't believe it has. I do believe that the law is behind the times, 100 percent. It frequently is. That's one of the virtues of the law. But I can't—I'm asking this court to respect its prior decision and say, Hey, look, even in Simington, the court took great pains to discuss the abhorrent behavior. I don't think when the court wrote that—I don't know, but I'm assuming—that the court would have done that without acknowledging that something is wrong. Are you saying that we have to go en banc in order to change it? I think you do either have to go en banc or— Maybe that's the answer. Maybe we should go en banc on this case. Perhaps, but I think even if we go en banc, Judge, I still think that this court would be making law as opposed to interpreting law. The problem is that the Supreme Court has since said that gender nonconforming behavior, that discrimination on the basis of gender nonconforming behavior or appearance is discrimination on the basis of sex, right? Yes, but those facts don't apply in this case because we're not talking about gender nonconforming behavior. What's more gender nonconforming to a stereotype of male behavior than having sex with men? This is the problem with this case. The case my client—the case my adversary is arguing has nothing to do with the facts. The facts that came out at trial from the person who complained about him was not that he was acting in a homosexual manner. It was that he was hitting on her. He was flirting with her. He was whispering in her ear. He was touching her inappropriately, and then when she said— This may be what she said and what may be what happened for all I know, but what Mr. Maynard said when he fired Ms. DeSarda was that this was because he had talked about his personal life, and the only thing that Maynard or anyone else ever said to DeSarda about it was what he said about his personal— Now, I understand that the complainant now says something more different about what was said, but no one at the time said anything other—about his personal— that he said anything about his personal life other than that he was gay and he had an ex-husband to prove it. The context of this is that you have two people that just jumped out of an airplane, and she's saying—he is saying to her, I just broke up with my boyfriend. We may not—the context is we may not have a reason to hit the ground safely versus we're going to get to the ground safely. Yeah, that's very potent, and if Mr. Maynard had said that or given any indication that he knew that that is exactly what was said, we might have a different case, but isn't it rather troubling that all Maynard essentially says is you told her you were gay? That's talking about your personal life, and I won't have it. He didn't say you told him you were gay. He said you were talking about your escapades, and my adversary wrote about escapades, ascribing a meaning to that that, as came out at trial, was not the meaning that was ascribed by my adversary. Yes, you talked about your escapades in the context of free-falling to the ground under a parachute— excuse me, not free-falling, falling with the assistance of a parachute. That's the context, and even if this Court sitting in bank or the three of you decide to say, you know what, we were wrong in Symington, and now we believe that Title VII covers sexual orientation, Judge Lynch, as you correctly noted, the standards are identical. This Court has determined that the standards under Federal law and State law are identical, but the Court of Appeals—I'm sorry, Judge Kaye, writing for the Appellate Division, found that the standards are identical, and that's in Forrest v. Jewish Guilt for the Blind, and this Court in Weinstock v. Columbia University. Both New York's highest court— If the standard is identical, what is the standard? As the judge charged. But for? Determinative yes. And that's what the jury decided. You know, we don't have the abhorrent facts that this Court had to consider in Symington. Here we had a customer who complained to the boss, and the boss said, you know what, you've been fired for this before. This is the third time I hired you. I'm letting you go. And to the extent—there was no sexual harassment—I'm sorry, there was no hostile work environment claim that was withdrawn before trial. There was testimony that this individual introduced himself to the owner of the company by reaching out his hand and saying, hi, Gay Don. He testified that he liked his coworkers. They all treated him well. Nobody treated him differently based upon his sexual orientation. He was hired three times. He was fired three times. All by the same person. All knowing what his sexual orientation was. Absolutely. Absolutely. So this case, yes, it has important sociological issues. I agree 100%. And I may not have agreed when I first started working on this case, but I absolutely agree now. But it's up to our legislators to change that law. Otherwise, I have to explain to my children and everybody else's children why the three branches of government don't stand for what we were taught they stand for. You can do that without this case. Sometimes that's true. I'd rather not do that in regards to this case, Judge. I see I still have more time, but unless there are more questions for me. That's okay. Thank you very much. Thank you, Your Honors. Okay. A determining factor but for is not a motivating factor. It is a lesser standard of proof. And while it is true that at least two of the three occasions when my client worked at this firm, as you hear on the tape, I don't care what you talk about, and I don't care what those guys talk about, as long as you don't tell my customers something that he admitted in his deposition. What he told the customer certainly implied that he was homosexual. But if you were getting into an airplane and you heard the announcement, this is your captain speaking, I've just gone through a wrenching divorce, without knowing the sex of the captain or the orientation, wouldn't you be concerned that the person who has your life in their hands could be psychologically upset? Well, perhaps, but that wasn't what happened here when the heterosexual tandem skydiver was allowed to tell clients about his marriage. That he was not going through a divorce. Right. Well, my client didn't. Going through a divorce of whatever gender of anybody is wrenching and can cause despair and can make people suicidal. If the complainant had said that I was bothered that someone told me he was going through a divorce, that would be one thing, but it was the fact that he said he was gay, and the reason he said he was gay is that he was accused of being straight, and he wanted to take himself out of the sexual triangle that he was put into. With all of these ambiguities and conflicting motivations, is this the right case in which to revisit Symington? I think that it is, especially since there are so many motivations. The jury could have considered, for example, even something like the workers' compensation evidence. So you're saying the more ambiguous the facts, the more this is the right vehicle. When the judge instructed on but-for causation, and there's another case, Zhu Jianzhu against State University of New York, which is also an unpublished case. Just to follow this out so I understand what the difference really is, if the judge had instructed motivating factor and the jury found it was a motivating factor, that still wouldn't win the case for you. That would shift the burden to the defendant to show that it was not a determinative factor because he would have been fired anyway for other reasons. That's one thing it would do. It could do. But it could also be a motivating factor in such that if they didn't assert that affirmative defense, which would be their right to do, their decision to do, it would win us the case. They could assert that affirmative defense. Well, did they assert it? No, they did not. Because they didn't have to. Because the judge gave the but-for. In addition, this court does not have to go en banc. As I pointed out, there are two ways in which this court can avoid an en banc, is where two cases conflict. And we've pointed out the cases that conflict here are Holcomb against Iona College, back the Hastings on Hudson, and less in particular, Windsor and Obergefell. Those cases are completely inconsistent with Simonton, and you put them all together, and those Supreme Court cases with the cases decided by this court after Simonton require this court to reconcile the inconsistency. If there are no more questions. Thank you. Thank you both. At this time, we will take a seven-minute recess. We should be back. Thank you. Court is in recess.